# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| IN RE: | § § § | CASE NO. 19-12366 Jointly Administered With CASE NO. 19-12367 |
| DOMINION GROUP, LLC, and CAPE QUARRY, LLC. | § § § § | CHAPTERs 7 & 11 SECTION A |
| | § | |

| | | |
|---|---|---|
| JOE WILLIAM CLINE, III, MARY ANNE CLINE, HARDSTOCK LLC, DOMINION GROUP, LLC, AND BARBARA RIVERA-FULTON IN HER CAPACITY AS CHAPTER 7 TRUSTEE OF THE ESTATE OF DOMINION GROUP LLC, | § § § § § § § § | ADV. NO. 22-1002 |
| PLAINTIFFS, | § § | |
| V. | § § | |
| HELLER, DRAPER & HORN LLC, DOUGLAS S. DRAPER, AND ABC INSURANCE COMPANY, | § § § | |
| DEFENDANTS. | § § | |

| | | |
|---|---|---|
| JOE WILLIAM CLINE, III AND HARDSTOCK LLC, | § § § | |
| PLAINTIFFS, | § § | ADV. NO. 22-1010 |
| V. | § § | |
| HELLER, DRAPER & HORN, LLC, DOUGLAS S. DRAPER, AND ABC INSURANCE COMPANY, | § § § § | |
| DEFENDANTS. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are the following:

- In Adversary No. 22-1002:

    - *Motion for Summary Judgment and Incorporated Brief in Support* ("MSJ No. 1"), [ECF Doc. 12], filed by Heller, Draper & LLC ("Heller Draper");

    - Oppositions to MSJ No. 1, [ECF Docs. 19 & 24], filed by Joe William Cline, III and Hardstock LLC;

    - *Limited Response To Motion for Summary Judgment, Motion To Add Party, and Motion To Consolidate*, [ECF Doc. 20], filed by Barbara Rivera Fulton, the chapter 7 trustee (the "Trustee"); and

    - Reply filed by Heller Draper in support of MSJ No. 1, [ECF Doc. 24].

- In Adversary No. 22-1010:

    - *Motion for Summary Judgment and Incorporated Brief in Support* ("MSJ No. 2"), [ECF Doc. 6], filed by Heller Draper;

    - Opposition to MSJ No. 2, [ECF Doc. 8], filed by Joe William Cline, III and Hardstock LLC; and

    - Reply filed by Heller Draper in support of MSJ No. 2, [ECF Doc. 12].

- In Case No. 19-12366:

    - *Motion To Abandon*, [ECF Doc. 433], filed by the Trustee;

    - Objections to the Motion To Abandon, [ECF Docs. 437 & 441], filed by Heller Draper; and

    - Reply filed by the Trustee, [ECF Doc. 438].

For the reasons below, the Court finds that there is no genuine dispute as to any material fact and that Heller Draper is entitled to judgment as a matter of law in both MSJ No. 1 and MSJ No. 2.  The Court denies as moot the Motion To Abandon filed by the Trustee.  The Court will issue a separate *Order To Show Cause* with instructions to the parties to determine appropriate

sanctions, if any, for the willful violation of the automatic stay by Joe William Cline, III, Hardstock LLC, and Joshua Palmintier.

**JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). The Fifth Circuit has expressly held that state-law malpractice claims against estate professionals are "core proceedings" arising in a bankruptcy case. *See Southmark Corp. v. Coopers & Lybrand (In re Southmark Corp.)*, 163 F.3d 925, 927 (5th Cir. 1999); 28 U.S.C. § 157(b). The venue of the Debtors' chapter 7 and chapter 11 cases are proper under 28 U.S.C. §§ 1408 and 1409(a).

**BACKGROUND**

**A.  The Debtors' Bankruptcy Filings and Retention of Heller Draper as Counsel**

On September 3, 2019, Dominion Group LLC ("Dominion") and Cape Quarry LLC ("Cape Quarry") (together, the "Debtors") filed chapter 11 bankruptcy petitions. [No. 19-12366, ECF Doc. 1; No. 19-12367, ECF Doc. 1].[1]  At the time of filing, 50% of Dominion was held by Hardstock LLC and the other 50% was owned by Baranof Strategic Services, LLC. Joe "Trey" Cline, III ("Cline") wholly owned Hardstock LLC and his business partner, Wesley David Robert ("Robert"), wholly owned Baranof Strategic Services LLC. [No. 19-12366, ECF Doc. 215, Part III]. Dominion wholly owned Cape Quarry, which held all assets and operations. [No. 19-12367, ECF Doc. 1]. Cline and Robert authorized the bankruptcy filing of both Debtors. [No. 19-12366, ECF Doc. 51; No. 19-12367, ECF Doc. 1]. At all times in these cases, Cline acted as the principal of the Debtors.

---

[1]     On October 2, 2019, the Court issued an Order for joint administration of the Debtors' cases. [No. 19-12366, ECF Doc. 48].

On October 22, 2019, the Debtors filed substantially similar applications to employ Douglas Draper and the law firm of Heller Draper as Debtors' counsel *nunc pro tunc* to October 16, 2019. [No. 19-12366, ECF Doc. 98; No. 19-12367, ECF Doc. 62]. Each application attached as an exhibit the engagement letter signed by Cline on behalf of the Debtors, acknowledging that the Debtors had retained Heller Draper to represent them in their bankruptcy cases on the terms specified in the engagement letter. [No. 19-12366, ECF Doc. 98, Ex. B; No. 19-12367, ECF Doc. 62, Ex. B]. On December 11, 2019, the Court entered an Order approving the employment of Heller Draper on a final basis. [No. 19-12366, ECF Doc. 141].

**B. Confirmation of a Plan in Cape Quarry and Dominion's Conversion to Chapter 7**

On January 15, 2020, the Court granted without objection an extension of the exclusive period within which the Debtors could file a plan and obtain acceptances of that plan. [No. 19-12366, ECF Doc. 170]. On February 28, 2020, the Debtors proposed a joint plan of reorganization and an accompanying disclosure statement, which contemplated that an unidentified third-party lender would lend $1.5 million to the Debtors or to the Debtors' equity holders; that loan would be combined with proceeds from the Debtors' ongoing operations to pay off the Debtors' secured lenders over time and allow Dominion's equity holders (Hardstock LLC (Cline) and Baranof Strategic Services LLC (Robert)) to retain their interests. [No. 19-12366, ECF Docs. 214 & 215]. But the Debtors had difficulty getting the disclosure statement approved. [No. 19-12366, ECF Docs. 226, 227, 235, 236, 247, 248, 253, 254, 258, 259, 265, 266, 277 & 289]. On April 29, 2020, the Debtors filed another request to extend the time to obtain acceptances of the plan; however, on May 14, 2020, the Debtors withdrew that request. [No. 19-12366, ECF Doc. 234].

On August 18, 2020, after the Debtors' exclusive period to obtain acceptances of their plan expired, a group of prepetition secured creditors and post-petition financers (the "Secured

Creditors") filed a proposed plan of reorganization for Cape Quarry only (the "Secured Creditor Plan"). [No. 19-12367, ECF Doc. 91]. Weeks later, Cline formed Quarry Aggregates, LLC ("Quarry Aggregates"), and through counsel, Matthew Pepper ("Pepper"), filed a joint plan of reorganization for both Debtors (the "Quarry Aggregates Plan"). [No. 19-12366, ECF Doc. 292; No. 19-12367, ECF Doc. 99]. On September 15, 2020, following the filing of the Quarry Aggregates Plan, Heller Draper filed an expedited *Motion To Withdraw as Counsel of Record* (the "Motion To Withdraw"). [No. 19-12366, ECF Docs. 294 & 295]. Heller Draper explained:

> On September 15, 2020, Heller Draper was notified by Trey Cline, Manager of Cape Quarry, LLC and Dominion Group, LCC, that Heller Draper was being terminated. Heller Draper has requested information as to whether the Debtors have replacement counsel and was advised that "replacement counsel would seek to enroll when the Heller Draper Motion to Withdraw was filed". Trey Cline has been advised of the need for replacement counsel and the fact that a Corporation under applicable law cannot appear in proper person.

[No. 19-12366, ECF Doc. 294]. At the hearing on the Motion To Withdraw on September 23, 2020, Draper conveyed to the Court his belief that Cline desired to "weaponize" the operations of the Debtors to favor the Quarry Aggregates Plan over the Secured Creditor Plan. [No. 19-12366, Hr'g Tr. Min. 1:16:05–1:49:36 (Sept. 23, 2020)]. Charles Milner ("Milner"), one of the Debtors' Secured Creditors, as well as the Official Committee of Unsecured Creditors of Cape Quarry, LLC, objected to the withdrawal of Heller Draper absent replacement counsel. [No. 19-12366, ECF Docs. 301 & 303].

On the morning of the hearing to consider the Motion To Withdraw, Pepper filed a motion to employ himself as counsel for Cape Quarry. [No. 19-12367, ECF Doc. 117]. Although Pepper stated in his application that his firm "obtained a waiver of conflicts from Quarry Aggregates waiving any conflict between [Quarry Aggregates and the Debtor] that might arise," the Court denied Pepper's application to substitute Heller Draper as Cape Quarry's counsel, finding that

5

Pepper did not meet the "disinterestedness" standard for estate professionals under 11 U.S.C. § 327(a).  [No. 19-12366, Hr'g Tr. Min. 1:16:05–1:49:36 (Sept. 23, 2020)].

As to the Motion To Withdraw, Draper explained that, in light of the competing non-debtor plans, the role for Debtors' counsel had been reduced to counting the ballots cast for each of the competing plans.  [No. 19-12366, Hr'g Tr. Min. 1:16:05–1:49:36 (Sept. 23, 2020)].  Because the Court had been provided with no viable alternatives for Debtors' counsel and the fact that the Debtors as juridical entities could not represent themselves, the Court denied Heller Draper's Motion To Withdraw.  [No. 19-12366, ECF Doc. 307; No. 19-12367, ECF Doc. 121; No. 19-12366, Hr'g Tr. Min. 1:16:05–1:49:36 (Sept. 23, 2020)].  But given the tension between Cline and Heller Draper regarding representation of the Debtors as well as Cline's emerging conflict rooted in Quarry Aggregates' position as a plan proponent, the Court appointed an independent examiner under 11 U.S.C. § 1104(c) to (i) review, approve, and sign the joint disclosure statement for the Secured Creditor Plan and the Quarry Aggregates Plan; (ii) oversee the solicitation of acceptances and rejection of those plans; and (iii) tabulate ballots.  [No. 19-12366, ECF Docs. 308 & 310; No. 19-12367, ECF Docs. 123 & 125; No. 19-12366, Hr'g Tr. Min. 1:16:05–1:49:36 (Sept. 23, 2020)].

On October 13, 2020, Milner filed a *Motion To Expand the Powers of the Examiner* (the "Motion To Expand Powers"), asking that the Examiner be given sole authority to maintain operations of the Debtor Cape Quarry pending resolution of the competing plans.  [No. 19-12367, ECF Doc. 141].  Through the motion with sworn exhibits, Milner reported that Cline, "representing himself to be the owner of the [Cape] Quarry property in Missouri, has locked the premises," thereby unilaterally interrupting the operations of that Debtor and causing the Debtor to incur significant administrative expenses.  *Id*.  Milner also explained that Pepper, counsel for Quarry Aggregates, demanded that the Office of the United States Trustee ("UST") investigate the acts of

both the Secured Creditors and Heller Draper. *Id*. at Ex. 2. Milner supplemented the Motion To Expand Powers with evidence indicating that Pepper had advised Cline to sabotage Cape Quarry's operations in an effort to extort sources of financing and support away from the Secured Creditor Plan and toward the Quarry Aggregates Plan and/or to reduce the value of the Cape Quarry enterprise perhaps to allow Cline an opportunity to contribute less through the Quarry Aggregates Plan for the company. [No. 19-12367, ECF Doc. 147]. After notice and a hearing, the Court granted the motion in part, prohibiting Cline from accessing the Cape Quarry property without approval from the Secured Creditors and appointing a third-party representative to maintain operations of that Debtor to comply with governing contracts. [No. 19-12367, ECF Doc. 155].

On November 17, 2020, the Court confirmed the Secured Creditor Plan in the Cape Quarry case. [No. 19-12367, ECF Doc. 198]. A month later, the UST moved to convert the Dominion case to one under chapter 7 of the Bankruptcy Code, as its primary asset, Cape Quarry and the assets and operations contained therein, had been transferred to the Secured Creditors through confirmation of that Debtor's plan (the "Motion To Convert"). [No. 19-12366, ECF Doc. 337]. No one filed an opposition to the Motion To Convert, but at the hearing on the matter on January 6, 2021, Cline appeared and requested a continuance, stating he planned to retain substitute counsel on behalf of Dominion. [No. 19-12366, ECF Doc. 358]. The Court granted that request. At the continued hearing on January 27, 2021, Cline appeared through counsel and—without contacting the UST in advance, filing any opposition to the Motion To Convert, or filing a motion for a continuance—requested a second continuance, which the Court denied. *See id*. The Court then granted the UST's motion and converted the Dominion case to chapter 7. *See id*. On February 1, 2021, the Trustee was appointed to administer the Dominion estate. [No. 19-12366, ECF Doc. 361].

7

On February 12, 2021, attorney Joshua Palmintier ("Palmintier") filed on behalf of Cline and Hardstock, LLC, a motion to reconsider the conversion of Dominion's case to chapter 7 ("Motion To Reconsider").  [No. 19-12366, ECF Doc. 365].  Attached to that motion was a letter dated September 14, 2020, that had been received by Heller Draper in September 2020, and terminated Heller Draper's representation of the Debtors.  [No. 19-12366, ECF Doc. 365-1].  The letter contained a litany of complaints regarding Heller Draper's representation of the Debtors.  *See id*.  The UST, Milner,  and the Trustee each filed an objection to the Motion To Reconsider and after notice and hearing, the Court denied the motion.  [No. 19-12366, ECF Docs. 368, 369, 381 & 392].  On April 24, 2021, the Trustee conducted a meeting of creditors under 11 U.S.C. § 341.  [No. 19-12366, ECF Doc. 379].  Cline testified as the corporate representative of the Debtor Dominion and was represented at the meeting of creditors by Palmintier.  *See id*.  After that meeting, the Trustee filed no amended schedules listing any post-petition causes of action belonging to the estate.

### C.  Heller Draper's Fee Applications

Meanwhile, on December 14, 2020, Heller Draper filed its first and final application in the Cape Quarry case for compensation for the period of October 16, 2019, through December 1, 2020, seeking $403,929.50 in fees and $23,372.29 in reimbursable expenses as counsel for the Debtor ("Cape Quarry Fee Application").  [No. 19-12367, ECF Doc. 206].  Heller Draper properly served and noticed the Cape Quarry Fee Application for hearing on January 27, 2021; upon independent review of the reasonableness of the fees requested in the Cape Quarry Fee Application and with no objections having been filed, the Court approved the Cape Quarry Fee Application.  [No. 19-12367, ECF Doc. 238].  No one timely appealed the Court's Order and the Order became final.

8

On January 6, 2021, Heller Draper moved again to withdraw as counsel for Dominion and the Court granted the request on January 13, 2021. [No. 19-12366, ECF Docs. 344 & 352]. On June 18, 2021, Heller Draper filed its first and final application for compensation in the Dominion Case for the period of October 16, 2019, through January 13, 2021, seeking an allowed administrative expense claim for $27,840.00 for professional services rendered as chapter 11 counsel (the "Dominion Fee Application"). [No. 19-12366, ECF Doc. 402]. Heller Draper properly served and noticed the Dominion Fee Application for hearing on July 7, 2021; upon independent review of the reasonableness of the fees requested in the Dominion Fee Application and with no objections having been filed, the Court approved the Dominion Fee Application. [No. 19-12366, ECF Doc. 418]. No one timely appealed the Court's Order and the Order became final.

### D. The Trustee's Motion To Abandon Malpractice Claims Against Heller Draper and Cline's Subsequent State Court Lawsuits Against Heller Draper

On November 16, 2021, the Trustee filed a Motion To Abandon, seeking to abandon any potential claims Dominion held against Heller Draper. [No. 19-12366, ECF Doc. 433]. The Trustee properly served and noticed the motion for hearing on December 8, 2021. In the Motion To Abandon, the Trustee stated that, although Cline had conveyed to the Trustee his belief that the estate holds malpractice claims against Heller Draper as Dominion's chapter 11 counsel, the Trustee and her counsel had evaluated any such claims and potential defenses and had determined that "the Claims are of inconsequential value and benefit to the estate, and that abandonment is justified under 11 U.S.C. § 554(a)." *Id*.

On the same day as the filing of the Trustee's Motion To Abandon, Cline, represented by Palmintier, filed an *ex parte* motion seeking to expedite the hearing on the Trustee's Motion To Abandon and requested that the Court hear and grant the Trustee's motion on November 17, 2021—one day after the Trustee had filed the motion. [No. 19-12366, ECF Doc. 435]. After the

Court's regularly scheduled docket had concluded on November 17, Palmintier appeared telephonically to ask why the Court had not granted Cline's *ex parte* request and considered the Trustee's Motion To Abandon.  [No. 19-12366, ECF Doc. 436; Hr'g Tr. Min. 2:15:29–2:18:08 (Nov. 17, 2021)].   The Court explained that the *ex parte* motion was not only procedurally deficient, but it did not satisfy the Court's standards for expedited review of the Motion To Abandon.  [No. 19-12366, Hr'g Tr. Min. 2:15:29–2:18:08 (Nov. 17, 2021)].  Fortuitously, counsel for the Trustee was still on the telephone line and notified Palmintier that the Motion To Abandon had drawn objections and would be heard by the Court on December 8, 2021.  [No. 19-12366, Hr'g Tr. Min. 2:15:29–2:18:08 (Nov. 17, 2021)].   On December 1, 2021, Heller Draper timely filed an objection to the Trustee's Motion To Abandon, asserting that, under applicable Fifth Circuit law, this Court's final Orders approving Heller Draper's fee applications precluded any legal malpractice claims under the doctrine of *res judicata*.  [No. 19-12366, ECF Doc. 437].

*Within an hour of the November 17, 2021, exchange with the Court*, Palmintier fax-filed a lawsuit in Louisiana state court on behalf of Cline, Mary Ann Cline, Hardstock LLC—and Dominion, the chapter 7 Debtor—against Heller Draper, Douglas Draper individually, and placeholder ABC Insurance Company (the "Heller Draper Defendants"), alleging claims for legal malpractice, fraud, breach of fiduciary duties, breach of contract, and tortious interference with business relationships, and seeking damages and attorneys' fees ("State Court Lawsuit No. 1"). [No. 19-12366, ECF Doc. 439, Ex. B (referencing No. 2021-9385, filed Nov. 17, 2021)].  On December 6, 2021, the Heller Draper Defendants removed that lawsuit to the United States District Court for the Eastern District of Louisiana (the "District Court") pursuant to 28 U.S.C. §§ 1334

and 1452(a). [No. 19-12366, ECF Doc. 439, Ex. A]. The District Court referred State Court Lawsuit No. 1 to this Court on January 4, 2022. [Adv. No. 22-1002, ECF Doc. 7].[2]

At the same date and time as filing State Court Lawsuit No. 1, Palmintier fax-filed a second identical lawsuit in Louisiana state court, as he perceived that the first fax-filing had failed to

---

[2]    Palmintier submitted to this Court a letter dated January 28, 2022, asserting that State Court Lawsuit No. 1 "became a nullity by operation of law" because he never paid filing fees for the case labeled in the state court as No. 2021-9385. [No. 19-12366, ECF Doc. 449]. Palmintier stated that he paid filing fees for State Court Lawsuit No. 2, labeled in the state court as No. 2021-9384. *See id.* According to Palmintier:

> Thereafter, on December 6, 2021, Defendants Heller Draper & Horn LLC and Douglas S. Draper filed a Notice of Removal regarding Docket No. 2021-9385, even though that case no longer legally existed. This procedural error has resulted in a matter coming before you that is not subject to being legally acted upon. . . .

> The viable case, Docket No. 2021-9384, has never been removed. An Amended Petition is being filed in that matter today in an attempt to remove the suggestion of my client's pursuing causes of action that remain in the control of the Chapter 7 Trustee.

*Id.*; *see also* [Adv. No. 22-1002, ECF Doc. 19]. At a hearing held by this Court on May 11, 2022, Cline's counsel reasserted that this Court had no authority to rule on State Court Lawsuit No. 1 (Adv. No. 22-1002) because the lawsuit became an "absolute nullity" in state court under Louisiana law for failure to pay the filing fee timely and was thus "improperly removed." *See* Hr'g Tr. 00:00:01–00:20:07 (May 11, 2022).

Section 13:850 of the Louisiana Revised Statutes governs fax-filings of civil actions and the payment of filing fees and requires that filing fees for fax-filed lawsuits be paid within seven days of filing. *See* LA. REV. STAT. ANN. § 13:850(B). "If the filing party fails to comply with any of the requirements of Subsection B of this Section, the facsimile filing shall have no force or effect." *Id.* § 13:850(C). The statute does not state that the fax-filed lawsuit becomes an "absolute nullity" as a consequence of failing to pay the filing fee timely or failing to deliver the original signed petition to the Clerk's office timely. Rather, failure to comply with § 13:850's requirements only impacts the legal effect of the filing of the lawsuit such as, for example, whether state-law prescription periods have been interrupted. *See, e.g.*, *Wood v. St. Charles Parish Sch. Bd.*, 750 So. 2d 1168, 1169–72 (La. App. 5 Cir. 2000).

By December 7, 2021, the Heller Draper Defendants had timely filed both a notice of the removal of State Court Lawsuit No. 1 with the District Court and filed a copy of the notice of removal in the Louisiana state court. [Adv. No. 22-1002, ECF Docs. 1 & 5]. Thus, on December 7, 2021, the state court was divested of jurisdiction over State Court Lawsuit No. 1 and the District Court was vested with exclusive jurisdiction over the matter. *See Groves v. Farthing*, No. 15-722, 2015 WL 3646724, at *2–4 (E.D. La. June 10, 2015). The Heller Draper Defendants paid the federal court filing fee upon the filing of the Notice of Removal. [No. 21-2238, ECF Doc. 1 (memo to record) (E.D. La. filed Dec. 6, 2021)]. The District Court referred the matter to this Court on January 5, 2022. [Adv. No. 22-1002, ECF Doc. 1]. The plaintiffs filed no motion to remand the matter to state court timely under 28 U.S.C. § 1447. Nor have they moved to dismiss State Court Lawsuit No. 1 voluntarily. Thus, as stated above, this Court has subject-matter jurisdiction to render final judgment over this core proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(b).

transmit ("State Court Lawsuit No. 2").  [No. 19-12366, ECF Doc. 449].  On January 28, 2022, Palmintier filed an *Amended Petition for Damages* in State Court Lawsuit No. 2, removing Mary Ann Cline and Dominion as plaintiffs.  [Adv. No. 22-1010, ECF Doc. 5].  On February 7, 2022, the Heller Draper Defendants removed State Court Lawsuit No. 2 to the District Court, which referred the case to this Court on February 9, 2022.  [Adv. No. 22-1010, ECF Docs. 1 & 5 (referencing No. 2021-9384 (filed Nov. 17, 2021)].

### E.  Current Motions Before the Court

#### 1.  MSJ No. 1

On January 7, 2022, the Heller Draper Defendants filed three motions in State Court Lawsuit No. 1 removed to this Court:  (i) *Motion To Add Party*, seeking to join the Trustee as a plaintiff as she "has an interest relating to the subject of this action and absent her joinder, the [Heller Draper] Defendants will be subject to a substantial risk of incurring inconsistent obligations because of her interest in the claims being asserted by the Plaintiffs," [Adv. No. 22-1002, ECF Doc. 10]; (ii) *Motion To Consolidate*, seeking to consolidate the claims alleged in State Court Lawsuit No. 1 with the contested matter of the Motion To Abandon filed by the Trustee in the Dominion case, [Adv. No. 22-1002, ECF Doc. 11]; and (iii) MSJ No. 1, attaching competent summary judgment evidence and a statement of undisputed facts, [Adv. No. 22-1002, ECF Doc. 12].  MSJ No. 1 seeks judgment as a matter of law on all claims asserted in State Court Lawsuit No. 1, asserting that (a) the plaintiffs cannot assert malpractice claims because all of the plaintiffs (other than Dominion) were never clients of Heller Draper, (b) that all of the alleged claims are held by Dominion and controlled by the Trustee as property of the estate, and (c) in any event, the claims are now barred by the doctrine of *res judicata*.  MSJ No. 1 also seeks sanctions under 11 U.S.C. §§ 105(a) and 362(k) to be assessed against the plaintiffs and their counsel for willful

violation of the automatic stay by filing a lawsuit asserting Dominion's claims without Court authority to do so.

The Heller Draper Defendants properly served and noticed the motions for hearing on February 9, 2022. The Court granted the Motion To Add Party and the Motion To Consolidate at the hearing. [Adv. No. 22-1002, ECF Docs. 29 & 30]. The Court initially continued the hearing to resolve MSJ No. 1 to March 9, 2022, but continued the matter a second time to April 20, 2022, at the request of the parties, who reported that they had agreed to attempt to settle the matter amicably. [Adv. No. 22-1002, ECF Doc. 26]. Quickly, however, settlement negotiations failed.[3] The plaintiffs filed an oppositions to MSJ No. 1, but attached no competent summary judgment evidence or a statement of disputed material facts as required by this Court's local rules. [Adv. No. 22-1002, ECF Docs. 19 & 24].

  2. *MSJ No. 2*

In the meantime, the Heller Draper Defendants removed State Court Lawsuit No. 2 and the District Court referred the matter this Court on February 9, 2022. Through a pre-removal amendment, Dominion and Mary Ann Cline were dropped from the lawsuit as plaintiffs. [No. 19-12366, ECF Doc. 449]. On March 29, 2022, the Heller Draper Defendants filed MSJ No. 2 in State Court Lawsuit No. 2, attaching competent summary judgment evidence and a statement of undisputed facts. [Adv. No. 22-1010, ECF Doc. 6]. MSJ No. 2 mirrors MSJ No. 1 because State Court Lawsuit Nos. 1 & 2 are substantially similar. Thus, MSJ No. 2 seeks judgment as a matter

---

[3]  On March 14, 2022, Palmintier filed an Ex Parte *Motion To Withdraw as Counsel of Record for Cline and Hardstock*, stating that substitute counsel would be enrolling shortly. [Adv. No. 22-1002, ECF Doc. 32]. Weeks passed and no substitute counsel appeared in the case. The Heller Draper Defendants requested the motion to withdraw be set for hearing, which the Court granted. [Adv. No. 22-1002, ECF Docs. 33 & 34]. Because Cline had yet to retain substitute counsel and because Hardstock LLC, as a juridical entity, could not proceed *pro se*, the Court found that the rights of all parties in the dispute would be prejudiced if the Court granted Palmintier's motion to withdraw. Thus, the Court denied the motion. [Adv. No. 22-1002, ECF Doc. 36].

of law on all claims asserted in State Court Lawsuit No. 2 on the same theories as stated in MSJ No. 1. MSJ No. 2 reserves the rights of the Heller Draper Defendants to seek sanctions against Cline, Hardstock LLC, and Palmintier under 11 U.S.C. §§ 105(a) and 362(k) for willful violation of the automatic stay by filing a lawsuit asserting Dominion's claims without Court authority to do so.

The Heller Draper Defendants properly served and noticed the hearing to resolve MSJ No. 2 for April 20, 2022. Palmintier filed an opposition on behalf of Cline and Hardstock LLC on April 13, but attached no competent summary judgment evidence or a statement of disputed material facts as required by this Court's local rules. [Adv. No. 22-1010, ECF Doc. 8]. The Court granted leave for the Heller Draper Defendants to file a reply brief in support of MSJ No. 2. [Adv. No. 22-1010, ECF Docs. 10 & 12].

On May 11, 2022, the Court heard oral argument on both MSJ Nos. 1 & 2, as well as the Motion To Abandon, and took the matters under advisement. [ECF Doc. Adv. No. 22-1002, ECF Doc. 39; Adv. No. 22-1010, ECF Doc. 15].

## DISCUSSION

### A. Summary Judgment Standard

In the context of deciding a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case." *Northshore Offshore Grp., LLC v. A&B Valve & Piping Sys*., LLC *(In re Northshore Offshore Grp., LLC)*, Adv. No. 17-3406, 2018 WL 5880949, at *2 (Bankr. S.D. Tex. Nov. 5, 2018) (citing

*Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009)). As explained by the Fifth Circuit:

> An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine. Trial of such an issue would be a wasted effort. Thus employed to decide cases in which there is no genuine issue, Rule 56 is a means of disposing of meretricious disputes and serves the "very mission" attributed to it by the Advisory Committee: "to pierce the pleadings and to assess the proof to see whether there is a genuine issue for trial."

*Prof'l Mgrs., Inc. v. Fawer, Brian, Hardy & Zatakis*, 799 F.2d 218, 222–23 (5th Cir. 1986) (internal citations omitted).

In deciding a motion for summary judgment, "the judge's function is not [herself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). In so doing, the Court views the facts and evidence in the light most favorable to the non-moving party at all times. *See Campo v. Allstate Ins. Co.*, 562 F.3d 751, 754 (5th Cir. 2009). A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the presence or absence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact. *See* FED. R. CIV. P. 56(c)(1). Mere conclusory allegations are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73, F.3d 1322, 1325 (5th Cir. 1996). "The court need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3). If a party fails to properly support or refute

an assertion of fact, the Court may consider the fact undisputed for purposes of resolving a summary judgment motion. *See* FED. R. CIV. P. 56(e).

**B. Heller Draper Represented Only Dominion and Cape Quarry in the Chapter 11 Cases.**

In the Petition filed in State Court Lawsuit Nos. 1 & 2, Cline, individually and on behalf of Hardstock LLC, alleges that he entered into a contract with Heller Draper for legal representation associated with the chapter 11 bankruptcy cases of Dominion and Cape Quarry and that he and Hardstock LLC have suffered harm due to Heller Draper's negligence and breach of the duties of loyalty and care owed to them. [Adv. No. 22-1002, ECF Doc. 5; Adv. No. 22-1010, ECF Doc. 5]. All of the claims alleged by Cline, however, depend on the existence of an attorney-client relationship between Cline/Hardstock LLC and the law firm of Heller Draper. [Adv. No. 22-1002, ECF Doc. 5, Ex. A., ¶¶ 41–43; Adv. No. 22-1010, ECF Doc. 5, Ex. A, ¶¶ 40–47]. "It is the existence of the attorney-client relationship that establishes the duty owed by the attorney to his client." *Jones v. ABC Ins. Co*., 249 So. 3d 310, 316 (La. App. 5 Cir 2018) (citation omitted). Thus, to hold a legal malpractice claim in Louisiana, Cline and Hardstock LLC must first demonstrate that an attorney-client relationship existed at the time of the alleged malpractice. *See id*. at 316–17 (citations omitted); *see also MB Indus., LLC v. CNA Ins. Co*., 74 So. 3d 1173, 1184 (La. 2011) ("In order to establish a valid legal claim, [plaintiff] must show evidence sufficient to convince a reasonable trier of fact of (1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence." (citation omitted)).

The attorney-client relationship is "purely contractual in nature and results only from a clear and express agreement between the parties." *Jones,* 738 So. 2d at 316–17 (citing *Weinstein v. Weinstein*, 62 So. 3d 878, 882 (La. App. 3 Cir. 2011); *see also B.A. Kelly Land Co., L.L.C. v.*

*Questar Expl. & Prod. Co*., 106 So. 3d 181, 187 (La. App. 2 Cir. 2012). "The existence of an attorney-client relationship turns not only on continuous contacts involving advice or service, but also on the client's subjective belief that such a relationship exists." *Pearce v. Lagarde*, 330 So. 3d 1160, 1168 (La. App. 1 Cir. 2021) (citing *In re Letellier, II*, 742 So. 2d 544, 547–48 (La. 1999)). But "the client's belief that an attorney represents him must be reasonable under the circumstances." *Id*. (citing *In re Bordelon*, 894 So. 2d 315, 322 (La. 2005); *Weinstein*, 62 So. 3d at 882). "The requirement that the belief be reasonable is an objective standard." *Id*. (citing *Dwyer v. Binegar*, 95 So. 3d 565, 571 (La. App. 4 Cir. 2012)). Indeed, "[t]he claimant's subjective belief does not establish an attorney-client relationship unless the lawyer reasonably induced that belief." *Id*. (citation omitted).

Cline's Petitions specifically reference the applications he filed on behalf of Debtors Dominion and Cape Quarry in this Court to employ Heller Draper as Debtors' counsel in October 2019, and the employment agreement he signed and attached to those applications. [Adv. No. 22-1002, ECF Doc. 5, Ex. A (Petition for Damages, ¶ 8); Adv. No. 22-1010, ECF Doc. 5, Ex. A (Amended Petition for Damages, ¶ 11)]. The employment agreement defines Dominion and Cape Quarry as the "Client." [No. 19-12366, ECF Doc. 98, Ex. A; No. 19-12367, ECF Doc. 62, Ex. A]. The employment applications filed with this Court detail the services to be provided to the Debtors. [No. 19-12366, ECF Doc. 98; No. 19-12367, ECF Doc. 62]. Neither the employment application nor the employment agreement identifies or contemplates that Heller Draper would provide legal services or advice to Cline or Hardstock LLC. The Court issued a final Order approving the employment applications on the terms described therein pursuant to 11 U.S.C. § 327(a) governing employment of estate professionals. [No. 19-12366, ECF Doc. 141].

In spite of those facts, Cline alleges that he, individually and on behalf of Hardstock LLC, "w[as] under the reasonable belief that an attorney-client relationship persisted between themselves and Attorney Douglas S. Draper, and the Law Firm of Heller, Draper, & Horn, L.L.C." [Adv. No. 22-1010, ECF Doc. 5, Ex. A (Amended Petition for Damages, ¶ 40)].  Given the record and the circumstances in this case, that belief is not reasonable and the record does not contain any evidence that Heller Draper induced that belief.  In their statement of uncontested facts, the Heller Draper Defendants noted that during the course of the Debtors' bankruptcy cases, Cline retained other counsel to provide legal advice to him individually as the equity owner of Hardstock LLC. [No. 22-1002, ECF Doc. 12-1, ¶ 7; Adv. Pro. 22-1010, ECF Doc. 6-1, ¶ 7].[4]  The Heller Draper Defendants also provided competent summary judgment evidence establishing that Cline retained personal counsel to represent his equity interests in the Debtors' chapter 11 proceedings.  [No. 22-1002, ECF Doc. 12-2 (Declaration of Douglas S. Draper, ¶¶ 11–13 & Exs. 1–3); No. 22-1010, ECF Doc. 6-2 (Declaration of Douglas S. Draper, ¶¶ 11–13 & Exs. 1–3)].  The record before this Court further reveals that Cline and his non-debtor companies participated in the Debtor's bankruptcy through attorneys Pepper and Palmintier.  Finally, the record reflects that this Court entered final Orders approving Heller Draper's fee applications in the Debtors' bankruptcy cases for legal services provided to the Debtors—not to Cline or Hardstock LLC  [No. 19-12366, ECF Doc. 418; No. 19-12367, ECF Doc. 238].

The Court finds that Cline and Hardstock LLC have not carried their burden to establish the existence of an attorney-client relationship with Heller Draper.  Heller Draper owed no duties

---

[4]     Cline and Hardstock LLC failed to submit a statement of contested facts with its oppositions to MSJ Nos. 1 & 2; therefore, all material facts set forth in the statement of uncontested facts submitted by the Heller Draper Defendants in support of MSJ Nos. 1 & 2 are deemed admitted for the purpose of resolving those motions.  *See Nunez v. Standard Fire Ins. Co.*, No. 07-7457, 2009 WL 10687733, at *2 (E.D. La. May 8, 2009); Local Rule 7056-1(A).

to either Cline or Hardstock LLC. Rather, in these bankruptcy cases, Heller Draper owed duties only to its clients, Dominion and Cape Quarry, and any cause of action related to legal malpractice belongs to them.

### C. Cline and Hardstock LLC Do Not Have Derivative Standing To Pursue Dominion's Malpractice Claims Against Heller Draper.

"Causes of action that belong to the debtor at the time the case is commenced or that are acquired after commencement but before conversion are . . . property belonging to the estate." *Cantu v. Schmidt (In re Cantu)*, 784 F.3d 253, 257 (5th Cir. 2015) (internal quotations and citations omitted). After Cape Quarry was reorganized under the Secured Creditor Plan, the Court converted Dominion's bankruptcy case to one under chapter 7 of the Bankruptcy Code and the Trustee was appointed to administer the assets of the estate. "If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim." *In re Wilson*, 527 B.R. 253, 255 (Bankr. N.D. Tex. 2015) (citing *In re Educators Grp. Health Tr.*, 25 F.3d 1281, 1284 (5th Cir. 1994)). The record suggests that Cline understood this. Cline first approached the Trustee to inform her of his belief that Dominion held malpractice claims against Heller Draper, presumably to encourage her to pursue those claims. [No. 19-12366, ECF Doc. 433].

Although Cline holds equity interest in an entity that holds 50% of Dominion, "[t]here is no explicit statutory authority granting a non-trustee party the power to sue on behalf of the trustee; the derivative powers recognized by the courts in chapter 11 do not apply in a chapter 7 case." *In re Wilson*, 527 B.R. at 257 (citing *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 8 (2000)). The policy behind the general prohibition on derivative standing in chapter 7 is straightforward:

> The power to grant derivative standing to a creditor to pursue estate causes of action . . . should not be exercised in a relaxed manner by bankruptcy courts. Otherwise a creditor could "hijack" a Chapter 7 bankruptcy case in a manner Congress did not

> envision. If a creditor does not agree with a Chapter 7 trustee's exercise of its fiduciary duties, it can file a motion to compel the trustee to act or file a motion to have the trustee removed. But, it would seem to be, generally, an unwise idea to allow a creditor to usurp the trustee's role as a representative of the estate— including being a gatekeeper for what actions make sense and the evaluator of the potential benefits of litigation.

*Id*. (quoting *Larson v. Foster (In re Foster)*, 516 B.R. 537, 541–42 (B.A.P. 8th Cir. 2014)). There may be limited circumstances in which a creditor in a chapter 7 case can obtain derivative standing from the Court to pursue estate claims, but Cline and Hardstock LLC chose not to petition the Court for derivative standing to pursue the claims prior to filing State Court Lawsuit Nos. 1 & 2.[5]

**D. Even If Cline Were Able To Obtain Derivative Standing To Pursue Dominion's Claims Against the Heller Draper Defendants, the Claims Are Barred by *Res Judicata*.**

On December 14, 2020, Heller Draper filed its first and final Cape Quarry Fee Application. On June 18, 2021, Heller Draper filed its first and final Dominion Fee Application. No objections to either application were filed by Cline or any otherparty in interest, and this Court, exercising its competent jurisdiction, granted them without hearing after its own independent review of the reasonableness of those requests. [No. 19-12366, ECF Doc. 418; No. 19-12367, ECF Doc. 238]. No one timely appealed the Court's Orders and the Orders became final. "[A]n award of fees for professionals . . . employed by a bankruptcy estate represents a determination of the 'the nature, the extent, and the value of such services.'" *Osherow v. Ernst & Young, LLP (In re Intelogic Trace, Inc.)*, 200 F.3d 382, 387 (5th Cir. 2000) (quoting 11 U.S.C. § 330(a)(3)). The central transaction involved in both of Heller Draper's fee applications and the claims now asserted in

---

[5]     "Court have granted standing to a creditor in a chapter 7 case when the trustee expressly transferred that power to the creditor with the bankruptcy court's approval." *In re Wilson*, 527 B.R. at 257 (citing *Avalanche Maritime, Ltd. v. Parekh (In re Parmetex, Inc.)*, 199 F.3d 1029, 1031 (9th Cir. 1999)). "Courts have also granted derivative standing to a creditor in a chapter 7 case when the creditor made a demand on the trustee to pursue a certain claim and the trustee unjustifiably *refused* the demand." *Id*. (citing *PW Enters., Inc. v, N.D. Racing Comm'n (In re Racing Servs., Inc.)*, 540 F.3d 892, 898–900 (8th Cir. 2008); *In re Dzierzawski*, 518 B.R. 415, 424 (Bankr. E.D. Mich. 2014)).

State Court Lawsuit Nos. 1 & 2 is the provision of legal services rendered by Heller Draper during the Debtors' chapter 11 proceedings. *See id*. at 386–87. Thus, the record before the Court reveals that all of the elements required to apply the doctrine of *res judicata* to the claims asserted in State Court Lawsuit Nos. 1 & 2: "For a prior judgment to bar an action on the basis of *res judicata*, the parties must be identical in both suits, the prior judgment must have been rendered by a court of competent jurisdiction, there must have been a final judgment on the merits and the same cause of action must be involved in both cases." *Id.* at 386 (quoting *Nilsen v. City of Moss Point, Miss*., 701 F.2d 556, 559 (5th Cir. 1983) (en banc)).

Even so, the doctrine of *res judicata* will not bar the claims alleged in State Court Lawsuits 1 & 2 unless Cline and Hardstock LLC could have and should have asserted malpractice claims during the Debtors' bankruptcy proceedings. *Id*. at 388. "*Res judicata* bars claims that should have been litigated in a previous proceeding." *Id*. The record here is clear: Cline participated in the bankruptcy cases of Dominion and Cape Quarry with full knowledge of every event that occurred. He authorized the filing of the Debtors' petitions. He signed the employment agreement and the applications that were approved by this Court and allowed the Debtors to retain Heller Draper as counsel in the chapter 11 cases. He worked closely with Heller Draper and authorized the filing of numerous pleadings on behalf of the Debtors, including the proposed plan of reorganization that would have allowed Cline to retain ownership and control over the Debtors and their operations. Over the course of these bankruptcy cases, he appeared through three different attorneys who he retained to represent his own interests and those of his wholly owned, non-debtor affiliates. From his viewpoint as the principal of the Debtors in these bankruptcy procedures, Cline possessed "sufficient general awareness" for the potential for claims against Heller Draper such as those asserted in State Court Lawsuit Nos. 1 & 2. *Id*. at 388–89.

Moreover, according to the allegations in State Court Lawsuit Nos. 1 & 2, Cline expected Heller Draper to "maintain a Chapter 11 Plan of Reorganization in compliance with the wishes and desires of Joe William 'Trey' Cline." [Adv. No. 22-1002, ECF Doc. 5, Ex. A, ¶ 10; Adv. No. 22-1010, ECF Doc. 5, Ex. A, ¶ 13]. The Petitions continue:

> The Senior Creditor's Plan of Reorganization was confirmed, and the damages made the subject of the present legal action first realized, on November 17, 2020. The effect of the Confirmation was to divest any equity interest of Joe William "Trey" Cline, in the inventory and equipment owned by former Cape Quarry, LLC, to deprive Dominion Group, LLC of it's [sic] primary asset, Cape Quarry, LLC, and to transfer all rights and assets of former Cape Quarry, LLC to the Secured Creditors Group.

[Adv. No. 22-1002, ECF Doc. 5, Ex. A, ¶ 15; Adv. No. 22-1010, ECF Doc. 5, Ex. A, ¶ 18]. Heller Draper filed the Cape Quarry Fee Application on December 14, 2020, and the Dominion Fee Application on January 6, 2021. The allegations verified by Cline in State Court Lawsuit Nos. 1 & 2 indicate that he had "an awareness of and focus on the general matters giving rise to the claims asserted" in State Court Lawsuit Nos. 1 & 2 prior to the filing of Heller Draper's fee application. *In re Intelogic Trace, Inc*., 200 F.3d at 388–91. But Cline chose not to voice any of his concerns when he had the opportunity to litigate the issues through the fee-hearing process.

That was a mistake. If Cline possessed any concerns regarding the legal services provided to the Debtors by Heller Draper, he should have raised them during the time given to him to object to the Cape Quarry Fee Application and to the Dominion Fee Application. For the reasons identified by the Fifth Circuit in *In re Intelogic Trace, Inc*., once the Orders of this Court approving those fee applications became final, any claims related to alleged legal malpractice committed by Heller Draper in these bankruptcy proceedings were barred by *res judicata*.

Accordingly, the Court finds that no genuine dispute as to any material fact exists and that the Heller Draper Defendants are entitled to judgment as a matter of law in their favor on all claims alleged in State Court Lawsuits Nos. 1 & 2.

### E. The Court Finds by Clear and Convincing Evidence that Cline, Hardstock LLC, and Palmintier Willfully Violated the Automatic Stay by Filing State Court Lawsuit Nos. 1 & 2.

Section 362(a)(3) of the Bankruptcy Code prohibits "any act . . . to exercise control over property of the estate." The Heller Draper Defendants assert that Cline, Hardstock LLC, and Palmintier willfully violated the automatic stay when they asserted the Debtors' malpractice claims alleged in State Court Lawsuit Nos. 1 & 2 without obtaining this Court's approval for derivative standing to do so. [Adv. No. 22-1002, ECF Doc. 12, ¶¶ 133–144; Adv. No. 22-1010, ECF Doc. 6, ¶ 6]; *see also Unsecured Creditors' Comm. of Gen. Homes Corp. v. Am. Sav. & Loan Ass'n of Fla. (In re Gen. Homes Corp.)*, 181 B.R. 870, 879 (Bankr. S.D. Tex. 1994). The movants have requested this Court to issue sanctions against Cline, Hardstock LLC, and Palmintier and in favor of Douglas Draper as an individual under 11 U.S.C. §§ 105(a) and 362(k), asserting that Draper has suffered damages by virtue of his having to defend himself and his law firm against the claims asserted in State Court Lawsuit Nos. 1 & 2.

"The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws," and "permits the debtor . . . to be relieved of the financial pressures that drove him into bankruptcy." H.R. REP. No. 95-595, at 340 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296–97. Indeed, "[t]he automatic stay is a self-executing injunction and constitutes a court order for contempt purposes." *West v. Peterson (In re Noram Res., Inc.)*, No. 08-38222, 2015 WL 5965654, at *5 (Bankr. S.D. Tex. Oct. 9, 2015)). "A party may be found in civil contempt if it 'violates an order of a court requiring in specific and definite language that a person do or refrain

from doing an act.'"  *Id.* (quoting *Baddock v. Villard (In re Baum)*, 606 F.2d 592, 593 (5th Cir. 1979)).  "There is no question that the automatic stay, defined by statute, is specific and definite." *Id.*  "In a contempt action based on the automatic stay, the focus in not on the subjective belief or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue." *Id.*  "When someone other than the estate's sole representative files a suit to adjudicate the rights of parties with respect to an asset of the estate, such action violates the automatic stay provisions of 11 U.S.C. § 362(a)(3)."  *In re McConathy*, No. 90-13449, 2022 WL 1612447, at *9 (Bankr. W.D. La. May 20, 2022) (citations omitted).

The facts surrounding the actions of Cline, Hardstock LLC, and Palmintier are not in dispute:  (i) a court order was in effect (the automatic stay) protecting Dominion at the time Palmintier filed State Court Lawsuit Nos. 1 & 2 on behalf of Cline and Hardstock LLC; (ii) the automatic stay is a definite and specific Order of the Court; and (iii) Cline, Hardstock LLC, and Palmintier failed to comply with the automatic stay.  "Specific intent to violate the automatic stay is not required for a showing of willfulness; it is sufficient that the party committed the act deliberately." *In re Sehman*, 632 B.R. 846, 852 (Bankr. N.D. Fla. 2021).  Indeed, the timing of the actions by Cline, Hardstock LLC, and Palmintier contribute to the Court's finding that their violation of the automatic stay was willful and committed in bad faith.  Cline and Palmintier knew that any claims against Heller Draper belonged to the Debtor Dominion, which is evidenced by the fact that they first approached the Trustee about the allegations.  When the Court refused to hear the Trustee's Motion To Abandon on less than a day's notice to parties in interest, as requested by Cline and Hardstock LLC, Palmintier filed State Court Lawsuit Nos. 1 & 2 *within the hour*.

In their opposition to MSJ Nos. 1 & 2, Cline and Hardstock LLC assert that the claims asserted in the State Court Lawsuit Nos. 1 & 2 "range[] wider than legal malpractice claims alone,"

implying that they have asserted claims that do not belong to the Debtors. [Adv. No. 22-1010, ECF Doc. 8]. But as made clear above, all of the claims asserted in State Court Lawsuit Nos. 1 & 2 belong to the Debtors, as all are derivative of the Debtors' malpractice claims against Heller Draper and are all dependent upon Heller Draper owing duties of care and loyalty to Cline and Hardstock LLC. Amending those actions to remove Dominion as a plaintiff does not cure the fact that Cline and Hardstock LLC have asserted claims that do not belong to them. Nevertheless, the Court was always available to answer their questions as to the nature of the claims and to consider a motion to grant derivative standing to Cline and Hardstock LLC. None chose to explore that option. "A court may find a stay violation willful when a party knows that the debtor filed bankruptcy and that the bankruptcy court is available to determine whether the stay applies, but nevertheless purposely takes the action that violates the automatic stay." *In re Sehman*, 632 B.R. at 852.

Although § 362(k) of the Bankruptcy Code provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages," the Heller Draper Defendants have provided the Court with no examples of courts awarding such damages to non-debtors. But "[t]he Fifth Circuit has expressly recognized that a court may invoke its § 105(a) civil contempt powers to compensate non-debtors for damages resulting from automatic stay violations." *In re McConathy*, 2022 WL 1612447, at *7 (citing *Kreit v. Quinn (In re Cleveland Imaging & Surgical Hosp., L.L.C.)*, 26 F.4th 285, 294 (5th Cir. 2022) (affirming the imposition of civil sanctions under § 105(a), rather than § 362(k), against insiders of a debtor for violating the automatic stay by filing an adversary to prosecute causes of actions which belonged exclusively to the liquidating trustee)). Section 105(a) of the Bankruptcy Code permits a bankruptcy court to

"issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," including civil contempt orders.  11 U.S.C. § 105(a); *In re Cleveland Imaging & Surgical Hosp., L.L.C.*, 26 F.4th at 294.

Having found that Cline, Hardstock LLC, and Palmintier have willfully violated the automatic stay, the Court invokes its civil contempt powers under § 105(a) to craft a remedy. "Civil contempt may only be employed in two situations:  to coerce the defendant into compliance with a court order and/or to compensate the complainant for losses sustained."  *In re Noram Res., Inc.*, 2015 WL 5965654, at *5.  Attorneys' fees may be awarded as a civil contempt sanction to compensate the aggrieved party.  *See Hutto v. Finney*, 437 U.S. 678, 691–92 (1978).  The Court will issue a separate *Order To Show Cause* with instructions to the parties to determine appropriate sanctions, if any, for the willful violation of the automatic stay by Cline, Hardstock LLC, and Palmintier.

## CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the Motions for Summary Judgment, [Adv. No. 22-1002, ECF Doc. 12; Adv. No. 22-1010, ECF Doc. 6], are **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion To Abandon is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that Heller Draper shall serve this Order on the required parties who will not receive a copy through the ECF system pursuant to the FRBP and the LBRs and file a certificate of service to that effect within three (3) days.

Adversary Proceedings Nos. 22-1002 and 22-1010 shall remain open pending this Court's resolution of the issue of sanctions for the willful violation of the automatic stay by Cline, Hardstock LLC, and Palmintier.  Once that issue is resolved, separate judgments on the Petitions

filed in Adversary Proceedings Nos. 22-1002 and 22-1010 will be entered in accordance with Bankruptcy Rules 7054 and 9021.

New Orleans, Louisiana, July 24, 2023.

_____
MEREDITH S. GRABILL
UNITED STATES BANKRUPTCY JUDGE